UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEAN J. GROULX, ESQ. and LAW OFFICES
OF DEAN J. GROULX, P.C.,

    Plaintiffs / Counter-Defendants,

v.

CONFEDERATION TECHNOLOGIES INC.,
CONFEDERATION HOLDINGS INC., and
DAVID MacDONALD,

    Defendants / Counter-Plaintiffs.

Case No. 3:20-10464-RHC-DRG
Hon. Robert H. Cleland
Mag. Judge David R. Grand

**ANSWER, AFFIRMATIVE DEFENSES, AND JURY DEMAND
IN RESPONSE TO
<u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

Defendants respond to Plaintiffs' First Amended Complaint as follows:

<u>**PLAINTIFFS' ALLEGATION:**</u>

"1.    Dean J. Groulx, Esq. is a Michigan citizen who resides and whose place of business is in Oakland County, Michigan. Mr. Groulx is an attorney, in good standing, licensed to practice law in the State of Michigan."

<u>**ANSWER:**</u> In response to the allegations contained in paragraph 1 of the First Amended Complaint, Defendants neither admit nor deny those allegations in the form and manner alleged by Plaintiffs for the reason that they are without sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiffs to their proofs.

**PLAINTIFFS' ALLEGATION:**

"2.  Law Offices of Dean J. Groulx, P.C. is a Michigan professional corporation whose principal place of business is located in Oakland County, Michigan. Mr. Groulx is the sole-shareholder of Law Offices of Dean J. Groulx, P.C."

**ANSWER:** In response to the allegations contained in paragraph 2 of the First Amended Complaint, Defendants neither admit nor deny those allegations in the form and manner alleged by Plaintiffs for the reason that they are without sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiffs to their proofs.

**PLAINTIFFS' ALLEGATION:**

"3.  David MacDonald is, upon information and belief, a citizen of Prince Edward Island, Canada.  Mr. MacDonald has conducted business in connection with this dispute in this Judicial District, including Oakland and Lapeer Counties."

**ANSWER:** In response to the allegations contained in Paragraph 3 of the First Amended Complaint, Defendants admit that Mr. MacDonald is a citizen of Prince Edward Island, Canada.  Defendants deny any allegations inconsistent with the forgoing.

**PLAINTIFFS' ALLEGATION:**

"4.  Confederation Technologies, Inc. ("CTI") is, upon information and belief, a corporation formed and organized under the laws of Prince Edward Island, Canada, with its principal place of business located at 25 4th St., Charlottetown, Prince Edward Island, Canada C1E 2B4.  Mr. MacDonald is, upon information and belief, the president of CTI.  CTI has conducted business in connection with this dispute in this Judicial District, including Oakland and Lapeer Counties."

**ANSWER:** In response to the allegations contained in Paragraph 4 of the First Amended Complaint, Defendants admit that CTI is a corporation formed and organized under the laws of Prince Edward Island, Canada and that Mr. MacDonald is the president of CTI. Defendants deny any allegations inconsistent with the forgoing.

**PLAINTIFFS' ALLEGATION:**

"5. Confederation Holdings, Inc. ("CHI") is, is, upon information and belief, a corporation formed and organized under the laws of Prince Edward Island, Canada, with its principal place of business located at 25 4th St., Charlottetown, Prince Edward Island, Canada C1E 2B4. Mr. MacDonald is, upon information and belief, the president of CHI. CHI has conducted business in connection with this dispute in this Judicial District, including Oakland and Lapeer Counties."

**ANSWER:** In response to the allegations contained in Paragraph 5 of the First Amended Complaint, Defendants admit that CHI is a corporation formed and organized under the laws of Prince Edward Island, Canada and that Mr. MacDonald is the president of CHI. Defendants deny any allegations inconsistent with the forgoing.

**PLAINTIFFS' ALLEGATION:**

"6. This Court has jurisdiction over the parties pursuant to, *inter alia*, MCL §§ 600.701, 600.705, 600.711, and 600.715."

**ANSWER:** In response to the allegations contained in Paragraph 6 of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**PLAINTIFFS' ALLEGATION:**

"7. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum of value of

3

$75,000.00 and is between citizens of the State of Michigan and the citizens or subjects of Prince Edward Island, Canada."

**ANSWER:** In response to the allegations contained in Paragraph 7 of the First Amended Complaint, Defendants admit those allegations.

**PLAINTIFFS' ALLEGATION:**

"8.   Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of this action is located in this Judicial District."

**ANSWER:** In response to the allegations contained in Paragraph 8 of the First Amended Complaint, Defendants admit that this district is a proper venue.

**PLAINTIFFS' ALLEGATION:**

"9.   The matter in controversy exceeds the sum or value of $75,000.00."

**ANSWER:** In response to the allegations contained in Paragraph 9 of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**PLAINTIFFS' ALLEGATION:**

"10.   David MacDonald, individually and in his capacity as president of CTI and CHI, hired the Law Firm to perform legal services for him and his corporation in the State of Michigan, including in Oakland and Lapeer Counties."

**ANSWER:** In response to the allegations contained in Paragraph 10 of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

4

**PLAINTIFFS' ALLEGATION:**

"11.   The Law Firm performed substantial legal services for Mr. MacDonald, CTI, and CHI.  These services relate to and include, but are not limited to:

a. Legal documents related to an industrial hemp dryer operation in Lapeer, Michigan, including drafting a promissory note, a loan and security agreement, an equipment lease agreement, and tolling and split processing agreements with growers;

b. Forming and organizing limited liability companies in the State of Michigan for industrial hemp drying, extraction, process, and manufacturing operations in the State of Michigan, including THC Partners, LLC; THC Real Estate Holdings, LLC; 8055 Angell Road Real Estate Holdings, LLC; 2033 Real Estate Holdings, LLC; Confederation Holdings USA, LLC; Michigan Hemp Processing LLC or North American Processing LLC, as well as drafting partnership and operating agreements for THC Partners, LLC. These limited liability companies would be based or operate, at least in part, in Oakland County, Michigan;

c. The proposed acquisition of a cherry brine plant at 8055 Angell Road in Williamsburg Michigan, to be converted into one of, if not, the largest industrial hemp processing and extraction facilities in North America, including negotiating, drafting, and executing a purchase and sale agreement and performing or overseeing all due diligence in connection with the acquisition, including Phase I Environmental Site Assessment and inspection of the land, buildings, and improvements;

d. The proposed acquisition of the assets of Total Health Companies, LLC, a Michigan limited liability company, located in Auburn Hills, Michigan, including drafting an asset purchase and sale agreement, a bill of sale, conditional release of claims and waiver of liens, employment agreements, non-disclosure and non-competition agreement, and inventions and discovery agreements;

e. The proposed acquisition of the commercial building at 2333 Commercial Drive in Auburn Hills, Michigan, to be used as an industrial hemp manufacturing facility, including drafting a purchase and sale agreement;

5

  f. A long-term relationship with a farmers' cooperative represented by Hemp Land Acquisitions, LLC, a Michigan limited liability company, based in Traverse City, Michigan, including, negotiating and structuring the relationship, and drafting and executing a split processing agreement with Hemp Land Acquisitions, LLC, and reviewing agreements between Hemp land Acquisitions, LLC and prospective growers;

  g. A long term seed supply relationship with Hempire Seed, LLC, an Idaho limited liability company, to service the contract with Hemp Land Acquisitions, LLC; and a processing relationship with High Voltage Hemp, LLC, an Idaho limited liability company, in connection with the establishment and operation of an industrial hemp processing and extraction facility in Ontario, Oregon."

**ANSWER:** In response to the allegations contained in Paragraph 11, including subparts (a)-(e), of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**PLAINTIFFS' ALLEGATION:**

"12. For its services, Mr. MacDonald, on behalf of himself and on behalf of CTI and CHI, agreed to pay the Law Firm a flat-fee of $100,000.00 and all related costs, including outstanding invoices from ATC Group Services, LLC to perform the Phase I Environmental Site Assessment and prepare the Baseline Environmental Assessment, totaling $6,500.00; R. Whiting Associates to perform an appraisal, totaling $2,250,000.00; and Tim Gordon, general contractor, to inspect the physical buildings, totaling $3,500.00, in connection with the proposed acquisition of the cherry brine plant at 8055 Angell Road, Willliamsburg, Michigan."

**ANSWER:** In response to the allegations contained in Paragraph 12 of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**PLAINTIFFS' ALLEGATION:**

"13. On Monday, January 17, 2020, Mr. MacDonald refused to pay the $100,000.00 agreed upon fee to the Law Firm or the related costs and denied that he or CTI and CHI had agreed to pay the Law Firm for its services."

**ANSWER:** In response to the allegations contained in Paragraph 13 of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**PLAINTIFFS' ALLEGATION:**

"14.   The Law Firm held $25,956.38 in its IOLTA account for Mr. MacDonald. The Law Firm is transferring these funds to the IOLTA account of the Law Firm's legal counsel of record in this action, pending resolution of the fee dispute between the parties, pursuant to Michigan Rule of Professional Conduct 1.16(d) and State Bar Michigan Ethics Opinion R-7."

**ANSWER:** In response to the allegations contained in paragraph 14 of the First Amended Complaint, Defendants neither admit nor deny those allegations in the form and manner alleged by Plaintiffs for the reason that they are without sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiffs to their proofs.

**PLAINTIFFS' ALLEGATION:**

"15. Law Firm incorporates by reference paragraphs 1 through 14 of this Complaint."

**ANSWER:** Defendants incorporate by reference each of their prior responses as if they were set forth again here.

**PLAINTIFFS' ALLEGATION:**

"16.   The defendants entered into an agreement to hire the Law Firm to perform legal services on their collective behalf and agreed to pay a flat-fee of $100,000.00 to the Law Firm for in services and fees related to the outside professional hired by Law Firm to perform due diligence in connection with the defendants' proposed acquisition of the cherry brine plant at 8055 Angell Road, Williamsburg, Michigan."

**ANSWER:** In response to the allegations contained in Paragraph 16 of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**PLAINTIFFS' ALLEGATION:**

"17.   The defendants have breached their agreement with the Law Firm by failing and/or refusing to pay the agreed upon sum of $100,000.00 to the Law Firm or the $12,500.00 due and owing to outside professionals."

**ANSWER:** In response to the allegations contained in Paragraph 17 of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**PLAINTIFFS' ALLEGATION:**

"18.   As a direct and proximate result of the defendants' breach of their agreement with the Law Firm, the Law Firm has suffered damages in the amount of $100,000.00, plus $12,500.00 in fees due and owing outside professional hired by Law Firm to perform due diligence for the defendants.  The sums held in escrow should be released to the Law Firm and applied against the professional fees due and owing the Law Firm and the outside professionals."

**ANSWER:** In response to the allegations contained in Paragraph 18 of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**WHEREFORE,** Defendants respectfully request that this Honorable Court enter a judgment of "no cause" on Plaintiffs' First Amended Complaint and award Defendants all of their reasonable costs and attorney fees incurred in this matter.

**PLAINTIFFS' ALLEGATION:**

"19.   Law Firm incorporates by reference paragraphs 1 through 18 of this Complaint."

**ANSWER:** Defendants incorporate by reference each of their prior responses as if they were set forth again here.

**PLAINTIFFS' ALLEGATION:**

"20.   The defendants have received a benefit from the Law Firm related to the legal services in performed for the defendants."

**ANSWER:** In response to the allegations contained in Paragraph 20 of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**PLAINTIFFS' ALLEGATION:**

"21.   It would be inequitable to permit the defendants to retain the benefit from the Law Firm related to the legal services in performed for the defendants."

**ANSWER:** In response to the allegations contained in Paragraph 21 of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**PLAINTIFFS' ALLEGATION:**

"22.   The defendants have been unjustly or inequitably enriched at the Law Firm's expense."

**ANSWER:** In response to the allegations contained in Paragraph 22 of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**PLAINTIFFS' ALLEGATION:**

"23.   The Law Firm is entitled to the value of its legal services and the professional services performed by outside professionals at Law Firm's request for the defendants' benefit.  The value of these services total $162,500.00.  The sums held in escrow should be released to the Law Firm and applied against the professional fees due and owing the Law Firm and the outside professionals."

**ANSWER:** In response to the allegations contained in Paragraph 23 of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**WHEREFORE,** Defendants respectfully request that this Honorable Court enter a judgment of "no cause" on Plaintiffs' First Amended Complaint and award Defendants all of their reasonable costs and attorney fees incurred in this matter.

**PLAINTIFFS' ALLEGATION:**

"24.   Law Firm incorporates by reference paragraphs 1 through 23 of this Complaint."

**ANSWER:** Defendants incorporate by reference each of their prior responses as if they were set forth again here.

**PLAINTIFFS' ALLEGATION:**

"25. At various times from September 15, 2019, through February 17, 2020, David MacDonald, individually and in his capacity as president of CTI and CHI, made material representation to Dean Groulx and others, verbally and in writing, about the CTI business opportunity in North America. For instance:

    a.    In a letter of intent, dated September 15, 2019, between CTI and Total Health Companies, LLC, a copy of which is in the defendants' possession, and at various times thereafter, Mr. MacDonald represented to Mr. Groulx and others that:

        (i)    CTI owned, or had acquired, state-of-art, large capacity $CO^2$ extraction equipment and technologies, certified for use in the United States, capable of extracting and processing industrial hemp in quantities sufficient to meet the anticipated needs, immediate and future, for the facilities and the business opportunity outlined by Mr. McDonald.

        (ii)    CTI required, at a minimum, 6,000-acres of arable farmland, managed by experienced farmers and harvesters, in order to secure supply agreements for sufficient biomass (industrial hemp) to fill CTI's actual and anticipated purchase orders for "crude oil," isolate; and distillate in CY 2020;

        (iii)    CTI required a facility, at a minimum of 30,000 square feet, in northern Michigan, within a 1-to-2 hour radius of cultivation supply sources (industrial hemp farmers) in Michigan, to produce sufficient quantities of "crude" to meet its actual and anticipated purchase orders for hemp oil, isolates, and distillates in CY 2020;

    (b)    CTI had cash "on hand" to complete its acquisitions of Total Health Companies' assets; the commercial building located at 2333 Commercial Drive, Auburn Hills, Michigan; the cherry brine plant located at 8055 Angell Road, Auburn Hills, Michigan, and to complete the buildout of both commercial buildings in order to convert them into one of, it not, the largest industrial hemp extraction and processing plants and manufacturing facilities in North America "for cash," with no mortgage or financial contingencies of any kind or nature;

11

    (c)    David MacDonald directed and authorized the Law Firm to prepare, present, and execute a Purchase and Sale Agreement, dated December 11, 2019, between North Pointe Farms, LLC and THC Real Estate Holdings, LLC regarding the purchase of the cherry brine plant at 8055 Angell Road, Williamsburg, Michigan, for $1,300,000.00 for "cash" with no mortgage or any other financial contingencies. The defendants are in possession of the drafts and the final, executed copy of the purchase and sale agreement.

    (d)    David MacDonald directed and authorized the Law Firm to prepare and present a Purchase and Sale Agreement, dated February 5, 2020, between Craig Yosin and Cynthia Yosin and 2333 Commercial Drive Real Estate Holdings, LLC for $2,200,000.00 for "cash" with no mortgage or other financial contingencies. The defendants are in possession of the drafts and the executed copy of the purchase and sale agreement from Mr. and Mrs. Yosin.

    (e)    David MacDonald directed and authorized the Law Firm to prepare and present an Asset Purchase and Sale Agreement on January 31, 2020, between Total Health Companies, LLC and Total Health Companies Holdings USA, LLC for roughly $1,030,000.00 for "cash" with no mortgage or other financial contingencies."

**ANSWER:** In response to the allegations contained in Paragraph 25, including subparts (a)-(e), of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**PLAINTIFFS' ALLEGATION:**

"26. These representations were false. At the time David MacDonald, individually and in his capacity as president of CTI and CHI, made these representations to Dean Groulx and others, he knew these representations were false, or made them recklessly, without knowledge of their truth and as a positive assertion. For instance:

    (a)    CTI did not, and does not, have sufficient cash on hand to complete its acquisition of Total Health Companies' assets, the commercial building at 2333 Commercial Drive, Auburn Hills, Michigan, or the cherry brine plant at 8055 Angell Road, Williamsburg, Michigan,

      or to complete the buildout for those buildings or the purchase and contribution of extraction and processing equipment, all of which totaling more than US $30,000,000.00.

(b)   CTI has been engaging in an illegal and fraudulent offering in the United States and Canada to raise as much as US $50,000,000.00 from prospective investors on the false representation that it has already acquired Total Health Companies' assets and the commercial properties at 233 Commercial Drive in Auburn Hills, and at 8055 Angell Road, Williamsburg, Michigan;

(c)   CTI did not, and does not, own large capacity $CO^2$ extraction equipment capable of meeting anticipated and projected capacity at the processing and extraction plant and the manufacturing facility. On February 17, 2020, David Campbell, of Advanced Extraction Technology, Inc., in Prince Edward Island, Canada, represented to Mr. Groulx and others that Mr. MacDonald, on behalf of CTI, had placed a purchase order for extraction and processing equipment from Advanced Extraction more than 10-months ago but had not paid "a red cent" towards the purchase of the equipment. Mr. Campbell also represented that Mr. MacDonald had previously informed him that CTI had already acquired Total Health Companies' assets and the commercial building at 2333 Commercial Drive, Auburn Hills, Michigan, which was false. As of February 17, 2020, the defendants not only had not acquired Total Health Companies' assets or the commercial building at 2333 Commercial Drive, Auburn Hills, Michigan, but also had not even finalized or executed purchase agreements in connection with the assets or building.

(d.)   CTI did not, and does not, have distribution channels to sell crude oil or isolate or distillate despite Mr. MacDonald's representation that CTI needed to "secure" a minimum of 6,000-acres of biomass to meet its anticipated and projected needs for CY 2020. Mr. Groulx negotiated and secured a split processing agreement with Hemp Land Acquisitions, LLC for as much as 12,000-acres of biomass in Michigan but after the contract was executed, Mr. MacDonald informed Steve Gordon, a member of Hemp Land Acquisitions, LLC, on February 17, 2020, that he would not, and could not, guarantee the purchase of biomass from HLA's growers because he

13

        did not have distribution, or purchase orders, for crude oil, isolate, or distillate for CY 2020.

    (e.)    David MacDonald, individually and in his capacity as president of CTI and CHI, falsely represented that CTI and its related holdings had, or would have, a market value of more than $350,000,000.00 by 2023 based on his business plan, pursuant to a Valuation of Business Interests of Confederation Technologies, Inc., prepared by MRSB and dated January 8, 2020, and forwarded by Mr. MacDonald to Mr. Groulx, via e-mail, on January 14, 2020. The defendants are in possession of MRSB's valuation report. Mr. MacDonald did not disclose to Mr. Groulx that Mr. MacDonald had hidden from MRSB, the private consulting firm that he had hired to prepare the valuation report, that CTI had not acquired Total Health Companies' assets or the commercial building at 2333 Commercial Drive, Auburn Hills, Michigan, or that CTI and its subsidiaries had not finalized an agreement to secure biomass from Hemp land Acquisitions, LLC, or that it did not own extraction or processing equipment valued at US $20,000,000.00 at that time, nor that CTI did not have the wherewithal to complete the acquisitions or the distribution channels necessary to come anywhere close to achieving the revenue projections."

**ANSWER:** In response to the allegations contained in Paragraph 26, including subparts (a)-(e), of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**PLAINTIFFS' ALLEGATION:**

"66. [*sic*]    David MacDonald, individually and in his capacity as president of CTI and CHI, had no intention, at the time he made the representations to Mr. Groulx and others, to fulfill the representations or promises to Mr. Groulx and others."

**ANSWER:** In response to the allegations contained in Paragraph 66 [*sic*] of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**PLAINTIFFS' ALLEGATION:**

"67. [*sic*] David MacDonald, individually and in his capacity as president of CTI and CHI, made the representations to Mr. Groulx and others with the intention that Mr. Groulx would rely upon them. Mr. Groulx relied to his detriment on the truthfulness and completeness of the representations. Mr. MacDonald, individually and in his capacity as president of CTI and CHI, induced Mr. Groulx to perform legal services for the defendants, based on these representations and on the false promise that Mr. Groulx would serve as president of U.S. operations for CTI and CHI, plus 20% of the equity in CTI and its consolidated holdings and subsidiaries, valued, according to Mr. MacDonald, at upwards of $350,000,000.00."

**ANSWER:** In response to the allegations contained in Paragraph 67 [*sic*] of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**PLAINTIFFS' ALLEGATION:**

"68. [*sic*] David MacDonald used CTI and CHI as fraudulent instrumentalities. CTI and CHI are mere alter-egos of David MacDonald."

**ANSWER:** In response to the allegations contained in Paragraph 68 [*sic*] of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**PLAINTIFFS' ALLEGATION:**

"69. [*sic*] As a direct and proximate result of the defendants' actions and omissions, Dean Groulx and Law Offices of Dean J. Groulx, P.C. suffered direct, consequential, compensatory, and special damages, for which the defendants are jointly and severally liable."

**ANSWER:** In response to the allegations contained in Paragraph 69 [*sic*] of the First Amended Complaint, Defendants deny those allegations in the form and manner alleged by Plaintiffs.

**WHEREFORE,** Defendants respectfully request that this Honorable Court enter a judgment of "no cause" on Plaintiffs' First Amended Complaint and award Defendants all of their reasonable costs and attorney fees incurred in this matter.

## **AFFIRMATIVE AND OR SPECIAL DEFENSES**

Defendants assert the following as their affirmative defenses to Plaintiff's First Amended Complaint:

1. Plaintiffs' First Amended Complaint fails to state a claim upon which relief can be granted.

2. Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' unclean hands or fraudulent or inequitable conduct.

3. Plaintiffs' claims are barred, in whole or in part, by waiver and/or estoppel.

4. Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' own conduct, breaches, and failures to perform.

5. Any claim for damages by Plaintiff, if any, are subject to setoff.

6. Plaintiffs' claims, and each allegation of fraud and misrepresentation, are barred in whole or in part because they fail to aver the circumstances constituting fraud with requisite particularity, and all such allegations should be accordingly dismissed.

7. Plaintiffs' claims, and each allegation of fraud and misrepresentation, are barred in whole or in part because each allegation is based on statements relating to future contractual promises, and not on statements relating to a past or existing fact.

8. The alleged $100,000 "flat-fee agreement" that Plaintiffs allege in their First Amended Complaint does not exist and even if it did, it is barred by the statute of frauds, among other reasons. If this "flat-fee agreement" is written, Plaintiffs should produce it to Defendants immediately.

9. If the parties had an express written agreement, Count II of Plaintiffs' First Amended Complaint entitled "Quantum Meruit" is barred because Count II is not pled in the alternative and an equitable claim cannot persist where an express written agreement covers the same subject matter. In fact, Plaintiff alleges that Count II expressly incorporates the paragraph numbers that comprise Count I of the First Amended Complaint. If Plaintiffs allege the parties had an express written agreement, Plaintiffs should produce it to Defendants immediately.

10. If the parties did not have an express written agreement, all of Plaintiffs' claims are barred including because (a) an alleged "flat-fee" agreement between attorney and client must be in writing and signed by the parties to be enforceable and (b) the claims are barred by the statute of frauds if there is no written agreement signed by the parties pertaining to and confirming the factual assertions alleged in the First Amended Complaint.

11. Count III of Plaintiffs' First Amended Complaint, entitled, "Fraud and Misrepresentation," is barred including because Plaintiffs failed to plead fraud with specificity as required, because Plaintiffs have no damages specifically and separately arising out of any purported "Fraud and Misrepresentation," and because whatever "reliance" Plaintiffs placed on whatever "representations" Defendants alleged made was not reasonable.

12. Plaintiffs' claims are barred because of Plaintiffs' multiple ethical violations and violations of provisions of the MRPC, including those which prohibit attorneys from entering into business transactions with their clients, and those which prohibit attorneys from simultaneously representing directly adverse parties in the same matter without first obtaining all clients' informed written consent.

13. Defendants do not owe Plaintiffs any money because Plaintiffs' stole or misallocated Defendants' funds; Plaintiffs or their counsel still have wrongful possession or control over Defendants' funds, which Plaintiffs or their counsel must refund to Defendants immediately; Defendants demand that Plaintiffs or their counsel promptly tender to Defendants all Defendants' funds in Plaintiffs' possession or control, and also provide a full and accurate accounting regarding those funds.

14. Plaintiffs' claims are all barred for all of the reasons set forth in Defendants' forthcoming counterclaims.

15. Paragraph numbers 27 through 65 of Plaintiffs' First Amended Complaint are missing.

16. All claims against David MacDonald personally are improper and must be dismissed immediately including because Mr. MacDonald only acted if at all through and on behalf of the corporate entity defendants and therefore he has no personal liability.

17. Defendants expressly reserve the right to supplement or amend these affirmative defenses to the fullest extent allowed by law.

## JURY DEMAND

Defendants demand trial by jury as to all claims for which such a right exists.

Dated: May 9, 2020

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By: */s/ Mark C. Vanneste*
Stephen P. Dunn (P68711)
Brandon J. Wilson (P73042)
Mark C. Vanneste (P73001)
450 West Fourth Street
Royal Oak, MI 48067-2557
Telephone: (248) 645-1483
E-mail: mv@h2law.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2020, I electronically filed this *Defendants' Answer to First Amended Complaint, Affirmative Defenses and Jury Demand* and this *Certificate of Service* with the Clerk of the Court using the ECF system, which will send notification of such filing to those registered persons/members of the Court's ECF system who are participants in these proceedings via electronic notice of this filing.

Dated: May 9, 2020           */s/ Mark C. Vanneste*
                             Mark C. Vanneste